# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH

Case No.03-80003-CIV-RYSKAMP/VITUNAC

SOUTHERN WASTE SYSTEMS, LLC,

Plaintiff,

v.

CITY OF DELRAY BEACH, FL, *et al.*,

Defendants.

_____/



## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

THIS CAUSE comes upon Plaintiff's Motion for Summary Judgment **[DE 99]**, filed March 30, 2004. Plaintiff also filed a Statement of Undisputed Facts **[DE 100]**. Defendants responded **[DE 117]** and filed their Statement of Material Facts **[DE 115]** on April 16, 2004. There was no reply. This Court heard oral argument on this motion on April 23, 2004. This matter is now ripe for adjudication.

## I. Background

This is an action for declaratory relief brought pursuant to the Commerce Clause of the United States Constitution, U.S. Const. Art. I, § 8, cl. 3 (Count I); the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. const. Amend. 14, § 1 (Count II); and 42 U.S.C. § 1983 (Count III). While Plaintiff states that this Motion is for final summary judgment, the Motion exclusively discusses Count I. Thus, this is in actuality a motion for partial summary judgment, and this Court will only consider Count I in this Order.

Plaintiff is engaged in the business of hauling construction and demolition debris

2                                                            UNITED STATES DISTRICT COURT
                                                             SOUTHERN DISTRICT OF FLORIDA

(hereinafter "C & D"), which is a type of waste distinct from solid waste.  Solid waste is

> sludge unregulated under the federal Clean Water Act or Clean Air Act, sludge
> from a waste treatment works, water supply treatment plant, or air pollution
> control facility, or garbage. rubbish, refuse, special waste, or other discarded
> material, including solid, liquid, semisolid, or contained gaseous material
> resulting from domestic, industrial, commercial, mining, agricultural, or
> governmental operations.

Fla. Stat. § 403.703(13).  On the other hand, C & D is

> discarded materials generally considered to be not water-soluble and
> nonhazardous in nature, including, but not limited to, steel, glass, brick,
> concrete, asphalt roofing material, pipe, gypsum wallboard, and lumber, from
> the construction or destruction of a structure as part of a construction or
> demolition project or from the renovation of a structure, and including rocks,
> soils, tree remains, trees, and other vegetative matter that normally results from
> land clearing or land development operations for a construction project,
> including such debris from construction of structures at a site remote from the
> construction or demolition project site. Mixing of construction and demolition
> debris with other types of solid waste will cause it to be classified as other than
> construction and demolition debris.  The term also includes:
>
> (a) Clean cardboard, paper, plastic, wood, and metal scraps from a construction
> project;
>
> (b) Except as provided in s. 403.707(12)(j), unpainted, nontreated wood scraps
> from facilities manufacturing materials used for construction of structures or
> their components and unpainted, nontreated wood pallets provided the wood
> scraps and pallets are separated from other solid waste where generated and the
> generator of such wood scraps or pallets implements reasonable practices of the
> generating industry to minimize the commingling of wood scraps or pallets
> with other solid waste; and
>
> (c) De minimis amounts of other nonhazardous wastes that are generated at
> construction or destruction projects, provided such amounts are consistent with
> best management practices of the industry.

Fla. Stat. § 403.703(17).  In October of 2001 and again in October of 2002, the Defendant City of

Delray Beach (hereinafter "the City") issued to Plaintiff one-year occupational licenses for

3                                                    UNITED STATES DISTRICT COURT
                                                     SOUTHERN DISTRICT OF FLORIDA

"grading and trash removal." *See* Plaintiff's Second Amended Complaint, at Exhibit B.

In February of 2001, the City published bid specifications for Bid No. 2001-21, which included an exclusive franchise for the collection of solid waste, vegetative waste, and recycling collection services. *See* Safford Deposition, Exhibit 2. Specifically, the bid specifications called for a hauler who could handle both residential and commercial waste. While Plaintiff contends that the bid specifications did not include the collection of C & D, it is clear that the specifications stated that roll-off collection services would be exclusive to the contractor and that the contract defined roll-off collection to include C & D. Safford Deposition, Exhibit 2, at 8, 11. Because Plaintiff does not have the capability to collect residential solid waste, residential bulk trash, or residential curbside recyclable material, it did not submit a bid. *See* Plaintiff's Statement of Facts, at ¶ 4, 6. The City awarded the exclusive franchise to BFI Waste Systems of North America, Inc.[1]

At the April 23, 2004 hearing, Defendants contended that it became apparent after entry into the franchise agreement that the current ordinance did not have an enforcement mechanism for C & D. Thus, in June of 2002, the City enacted Ordinance 15-02. The agreement and ordinance require all residential, commercial, and industrial entities that generate waste in the City to employ Defendant Waste Management, Inc. (hereinafter "Waste Management"), to remove and haul waste. This requirement includes the hauling of C & D. According to the agreement and ordinance, residents are billed for Waste Management's services directly by the

---

[1] Plaintiff originally included BFI as a defendant in this case, but substituted Defendant Waste Management, Inc., when Defendant Waste Management purchased the assets of BFI and was assigned the exclusive franchise.

4                                                    UNITED STATES DISTRICT COURT
                                                     SOUTHERN DISTRICT OF FLORIDA

City in the form of fees. However, commercial and industrial entities are billed by Waste

Management. Waste Management then pays a five percent franchise fee to the City. The City

claims that such funds are not a payment for Waste Management's status as the City's exclusive

contractor; instead, the fee covers the administrative costs and services provided by the City. For

example, these costs cover the City's costs for code enforcement activities, the tracking of

customer complaints, and the reviewing of monthly reports from Waste Management. The City

attempts to explain the billing differences by stating that the administrative cost in billing

residents is relatively low, while the billing of commercial and C & D collection is far more

complicated.

As already stated, the City's purpose in enacting the ordinance was to provide an

enforcement mechanism for its franchise agreement. In May 2002, the City cited one of

Plaintiff's customers with municipal code violations for doing business with Plaintiff. The City

also refused to allow Plaintiff to keep its containers at the property of its customer. Plaintiff

subsequently filed this action, claiming that the franchise agreement and ordinance prohibit it

from servicing its customers. Plaintiff now seeks summary judgment on it Commerce Clause

claim in Count I. Counts II and III are not at issue in the Motion.

## II. Discussion

**A.      Standard of Law**

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

5                                                    UNITED STATES DISTRICT COURT
                                                     SOUTHERN DISTRICT OF FLORIDA

matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in the original). The Court will

enter summary judgment if, after adequate time for discovery, a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R.

Civ. P. 56(e).

      In considering a motion for summary judgment the Court views the facts in the light most

favorable to the nonmoving party. *See Poller v. Columbia Broadcasting System, Inc.*, 368 U.S.

464, 473 (1962). While the moving party carries the initial burden of informing the court of the

basis for its motion and identifying those portions of the record that it believes demonstrates the

absence of a dispute of material fact or the absence of evidence, the opposing party must then set

forth specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 323;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party has

made a showing that no material issues of fact are in dispute, mere conjecture or speculation by

the party resisting summary judgment does not provide a basis upon which to deny the motion."

*Quarles v. GMC*, 758 F.2d 839, 840 (2d Cir. 1985).

**B.     Dormant Commerce Clause**

      The Commerce Clause states that Congress shall have power to regulate commerce

among the several states." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause also implies "a

limitation on the state's ability to isolate itself from the national economy and usurp Congress's

power." *GSW, Inc., v. Long County, GA*, 999 F.2d 1508, 1510 (11th Cir. 1993). This limitation

is known as the Dormant Commerce Clause. *Id.* at 1510-11. An exception to this limitation

exists under the market participation doctrine. *Id.* at 1511. Under this doctrine, government

entities are allowed to enter into a market with "the same freedoms and subject to the same

restrictions as a private party." *SSC Corp. v. Town of Smithtown*, 66 F.3d 502, 510 (2nd Cir.

1995). Thus, a state or municipality that buys or sells goods in the same manner that a private

entity would is a "market participant" and is exempt from Commerce Clause scrutiny. *GSW*, 999

F.2d at 1510-11; *see also Reeves, Inc. v. Stake*, 447 U.S. 429, 436-39 (1980).

      With this exception in mind, the first step in Dormant Commerce Clause analysis is

determining whether the government entity is regulating or participating in the market. *Reeves,*

447 U.S. at 436-39. If a government entity is a market participant, scrutiny ends there. However,

if the government entity engages in activities foreclosed to private entities, the state or

municipality is a market regulator rather than a market participant. *See SSC*, 66 F.3d at 512. If

the government entity is indeed a market regulator, the Court next asks whether the regulation

discriminates against interstate commerce. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142

(1970). Discriminatory regulations are *per se* invalid unless the entity "can demonstrate, under

rigorous scrutiny, that it has no other means to advance a legitimate local interest." *C & A*

*Carbone, Inc. v. Town of Clarkstown, NY*, 511 U.S. 383, 392 (1994) (citing *Maine v. Taylor*, 477

U.S. 131, 138) (1986)). On the other hand, if the regulation does not discriminate, the Court

inquires whether "the burden imposed on [interstate commerce] is clearly excessive in relation to

7                                    UNITED STATES DISTRICT COURT
                                     SOUTHERN DISTRICT OF FLORIDA

the putative local benefits." *Pike*, 397 U.S. at 142.

*1. Market Participation v. Market Regulation*

The first step in evaluating Count I is discerning whether the City is a market participant

or market regulator.  As already stated, a government entity crosses the line and becomes a

market regulator when it performs actions which a private entity could not.  Plaintiff alleges that

no private actor could accomplish the "scheme" that the City has put into place, thus making it a

market regulator; Defendants claim that there is no such scheme and that the City is a participant

in the market.

Plaintiff attempts to support its argument by claiming that the City has granted Waste

Management control of the location where C & D will be disposed.  However, this argument is

not persuasive.  Plaintiff itself admits that "[t]he CITY is not concerned with where the City's

contractor brings the C & D for disposal" and that the City does not even "know where its

contractor brings C & D for disposal."  *See* Plaintiff's Statement of Undisputed Facts, ¶¶ 26-27;

*see also* Defendants' Statement of Material Facts, ¶ 6 ("The Agreement does not govern where

the City's contractor brings C & D for disposal.... The City does not otherwise control to whom

the contractor brings C & D for disposal.").  It would be illogical to conclude that the City is a

regulator because it is not regulating what Waste Management does with the C & D it hauls.

On the other hand, Plaintiff's arguments regarding the City's billing process and the

enforcement of the agreement and ordinance are persuasive.  First, the Eleventh Circuit has held

that the failure of a government entity to invest, expend, or risk public funds in a business

venture may negate a finding of market participation.  *GSW*, 999 F.2d at 1513.  However, those

8                                                        UNITED STATES DISTRICT COURT
                                                         SOUTHERN DISTRICT OF FLORIDA

customers using the C & D hauling services provided by Waste Management are billed directly

by Waste Management. Waste Management then gives five percent of those funds to the City.

Thus, no public funds are spent in "hiring" Waste Management.[2]

    Defendants argue that the City is "purchasing" the services of Waste Management, but

because no funds flow from the City to Waste Management, this argument is unavailing.

Defendants attempt to remedy this flaw by arguing that the City bills residents directly, while

Waste Management only handles the more complicated billing for C & D. However, the

residential aspect of the agreement and ordinance is not at issue, and thus it cannot bolster

Defendants' arguments. Defendants also cite *SSC Corp.* in support of their argument that the

City is a market participant. However, the town in *SSC Corp.* was spending tax dollars in

entering waste disposal contracts, and the Second Circuit concluded that the town was a market

participant because of this spending of public funds. *SSC Corp.*, 66 F.3d at 515 (citing *White v.

Mass. Council of Const. Employers, Inc.*, 460 U.S. 204, 214-15 (1983)). *See also Huish

Detergents, Inc. v. Warren County, KY*, 214 F.3d 707, 717 (6th Cir. 2000) (stating that the

defendant county would not have implicated the Commerce Clause if it had hired the subject

service provider using public funds rather than forcing the residents to purchase the services).

    Second, to the extent that an ordinance threatens fines for failing to do business with the

contracted hauler, a town is engaging in market regulation. *SSC Corp.*, 66 F.3d at 512; *see also*

---

[2] Defendants rationalize the five percent "franchise fee" they receive by explaining that the fee is
compensation for Waste Management's wear and tear on the City's streets and to defray the City's administrative
and service costs. However, this Court is not concerned with how the City uses the money, but with who actually
hires Waste Management for its services. In this instance, it is the entities' customers, and not the City, who expend
funds for the services.

9                                                       UNITED STATES DISTRICT COURT
                                                        SOUTHERN DISTRICT OF FLORIDA

*USA Recycling, Inc. v. Town of Babylon, NY*, 66 F.3d 1272, 1282 (2nd Cir. 1995) (holding that

the defendant town, by "exercis[ing] its governmental powers by denying licenses to all garbage

haulers but the one hired by the Town, and by establishing civil and criminal penalties for haulers

who collect garbage without a license," was acting as a market participant because no private

actor could engage in such activity ).[3]  Those entities not utilizing Waste Management for the

hauling of C & D are subject to citations and fines for code violations.  *See* Plaintiff's Statement

of Undisputed Facts, ¶ 35.  The Defendants do not refute that claim.  Instead, in justifying the

five percent franchise fee, the Defendants readily state that the fee is used to help defray the costs

of code enforcement activities.  *See* Defendants' Statement of Material Facts, ¶ 8.  The City also

demands that the C & D containers of haulers other than Waste Management be removed from

work sites.  Because private actors do not have the power to enforce exclusive franchise

agreements through the imposition of code violation citations and fines or to demand the removal

of C & D containers from work sites, the City's actions must be considered regulatory.

In summary, the City has, without expending any public funds in hiring Waste

Management, exercised its governmental powers by prohibiting all haulers except Waste

Management from gathering C & D and has enacted penalties for those entities who violate that

prohibition.  Because no private entity could engage in such activity, the City is acting as a

market regulator.

---

[3] Interestingly, the court in *USA Recycling* indicates that, even though the defendant town expended public
funds in hiring its contractor, such participation in the market does not necessarily eliminate a town's regulatory
scheme.  *See USA Recycling*, 66 F.3d at 1282.  It provides that "states and local governments do not enjoy *carte
blanche* to regulate a market simply because they also participate in that market." *Id.*

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

*2. Discrimination Against Interstate Commerce*

Because the City is a market regulator, the Court must next consider whether the

agreement and ordinance are discriminatory.  Plaintiff relies on its claim that there was no

bidding process for the collection of C & D before the ordinance was enacted, but Defendants

claim that the bidding process was open and free and included the collection of C & D.

However, this Court has already determined that the bid specifications included C & D.  *See*

*supra*, at 3.[4]  Furthermore, Plaintiff has neither alleged nor shown that Defendants prohibited

any non-local entities from bidding.

Defendants contend that the exclusive franchise agreement withstands Commerce Clause

scrutiny because the bidding process was open and freely accessible.  Defendants cite *Houlton*

*Citizens' Coalition v. Town of Houlton* for this proposition.  175 F.3d 178, 181 (1st Cir. 1999).

*Houlton* involved an ordinance requiring residents to either use Houlton's chosen contractor for

the hauling of garbage or to haul it themselves.  *Id.* at 181.  The ordinance imposed fines and

other penalties for noncompliance and required the residents to contract individually with the

garbage hauler.  *Id.* at 182, 188.  However, after citing *SSC Corp.* and *USA Recycling*, the court

all but completely disregarded the distinction that Houlton, as opposed to the towns in those

decisions, did not expend public funds in support of its contractual arrangement.  *Id.* at 188.

Instead, reasoning that the Supreme Court in *Carbone* did not "explicat[e] a broad-based ban on

every flow-control ordinance that happens to be coupled with an exclusive contractual

---

[4] Plaintiff argued at the April 23, 2004 hearing that Defendants' own witness, Joseph Safford, claims that it was not intended for the bid specifications and initial franchise agreement to include the collection of C & D. However, because the documents are clear and unambiguous, this Court need not consider Safford's deposition testimony.  *See* Complaint, Exhibits 3.

11                                        UNITED STATES DISTRICT COURT
                                          SOUTHERN DISTRICT OF FLORIDA

arrangement in favor of an in-state operator," the court concluded that "to the extent that in-state

and out-of-state bidders are allowed to compete freely on a level playing field, there is no cause

for constitutional concern." *Id.*

   This Court disagrees with the proposition that the Commerce Clause inquiry ends when it

is determined that the bidding process was most likely open; a government entity cannot flout the

Commerce Clause simply by providing an open bidding process.  While the action before this

Court involves a forced transaction similar to the one in *Houlton*, the Court must also consider

whether the town has truly taken over the market-- a distinction the court in *Houlton* did not

"probe too deeply."  *See Houlton*, 175 F.3d at 188 (stating that the court "need not probe... too

deeply" the fact that Houlton, as opposed to the towns in the cases the court cited, did not expend

public funds).  For example, in *Carbone*, the Supreme Court considered the service of processing

and disposing of garbage and stated,

> With respect to this stream of commerce, the flow control ordinance
> discriminates, for it allows only the favored operator to process waste that is
> within the limits of the town. *The ordinance is no less discriminatory because
> in-state or in-town processors are also covered by the prohibition.*

*Carbone*, 511 U.S. at 391 (emphasis added).  Thus, the Supreme Court has held that an ordinance

can be discriminatory even if both in-state and out-of-state haulers are equally prohibited from

servicing customers.  This line of rationale also applies to a bidding process; an ordinance can be

discriminatory even if a fair bidding process was in place.  *See also SSC Corp.*, 66 F.3d at 514

("It made no difference that [the town in *Carbone*] discriminated equally against out-of-state and

in-state businesses in favoring a single local processor.").

   This conclusion is demonstrated by the Second Circuit.  In *USA Recycling*, which

ironically Defendants cite to support their argument, the defendant town hired a private company

to pick up all commercial garbage and another private company to operate an incinerator where

that garbage was burned. 66 F.3d at 1275. This system was financed through property taxes and

user fees. *Id.* The court held that, even though the town contracted a private entity to exclusively

collect the garbage, this contracting did not amount to a granting of "favored status" because the

town had eliminated the market entirely. *Id.* at 1283. The town itself was the lone provider of

the services. *Id.* It acted as "a local government providing services to those within its

jurisdiction, not as a business selling to a captive consumer base." *Id.*

      The court based its conclusion on the fact that the services were paid for through property

taxes, the payment of which "in return for municipal services is not comparable to a forced

business transaction that the ordinances in *Carbone* and [*SSC Corp.*] required, and that rendered

those ordinances discriminatory against interstate commerce." In other words, the Second

Circuit concluded that the very essence of the forced business transactions in *Carbone* and *SSC*

*Corp.* rendered those transactions discriminatory. The court distinguished the town in *USA*

*Recycling* simply because it was not "selling anything." *Id.* Because the town provided the

garbage service by using public funds, it had eliminated the market entirely. *Id.* at 1285. The

court concluded that the town thus treated all haulers alike and therefore did not discriminate

against interstate commerce. *Id.*[5]

      Thus, the inquiry becomes whether the City has eliminated the market in its entirety. It

"makes no difference" that the City maintained a proper bidding process if it favors one hauler

---

[5] The court also stated that the contractor was merely "hired" to collect garbage on the town's behalf. *USA Recycling,* 66 F.3d at 1288.

13                                                UNITED STATES DISTRICT COURT
                                                  SOUTHERN DISTRICT OF FLORIDA

over others without eliminating the market entirely. According to *USA Recycling*, the Defendant

City could eliminate the market by using public monies to fund the collection of C & D.

However, as has already been discussed, the City does not. Unlike the town in *USA Recycling*,

the City has not hired a hauler to collect garbage on behalf of the City. Because the market

remains in place, it is apparent that the City is favoring one local hauler over all others. The City

is not acting like "a local government providing services to those within its jurisdiction," but "as

a business selling to a captive consumer base." *See USA Recycling*, 66 F.3d at 1283. This forced

business transaction, which requires entities to hire the favored hauler, must therefore be

rendered discriminatory. *See id.* at 1283 (stating that the payment of taxes in return for municipal

services is distinguishable from the forced business transactions which were rendered

discriminatory in *Carbone* and *SSC Corp*.). Furthermore, the agreement and ordinance are no

less discriminatory because the prohibited group includes both in-state and out-of-state haulers.

*See Carbone*, 511 U.S. at 391.

        Because the ordinance is discriminatory, it is *per se* invalid, and the burden falls to

Defendants to show that the City has no less restrictive alternatives to further its stated interest of

taking over the waste collection market. *See* Defendants' Response, at 16. Unfortunately,

Defendants do not adequately elaborate on this interest other than to say it serves the City's

interests in "safety, sanitation, reliable garbage service, [and] cheaper service to residents." *Id.* at

17. Defendants claim that it would not be administratively feasible for the City to bill

commercial C & D customers directly. *Id.* at 9. Defendants also assert that such a billing

process would needlessly create a "public 'middleman.'" *Id.* Yet these mere allegations do not

14                                                      UNITED STATES DISTRICT COURT
                                                        SOUTHERN DISTRICT OF FLORIDA

demonstrate to this Court that the current billing practice under the ordinance is the least

restrictive means in taking over the waste collection market.  Furthermore, the Court already

concluded that the City has not taken over the market; thus, even the current billing process falls

short of meeting the City's stated interest in taking over the market.  This Court concludes that

the agreement and ordinance are in violation of the Commerce Clause as they pertain to the

collection of C & D, and Defendants are therefore enjoined from enforcing the C & D portions of

the exclusive franchise agreement and ordinance.

### III. Conclusion

THIS COURT, having considered the motion, the pertinent portions of the record, and the

arguments before this Court at the April 23, 2004 hearing, and being otherwise fully advised in

the premises, does hereby

ORDER AND ADJUDGE that Plaintiff's Motion for Summary Judgment **[DE 99]** is

GRANTED as to Count I for Declaratory Relief.  Both Ordinance 15-02 and the exclusive

franchise agreement between the Defendants are in violation of the Commerce Clause, and

Defendants are enjoined from enforcing the C & D portions of that agreement and ordinance.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this __24__ day of

April, 2004.

KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided:
Lawrence Brownstein, Esq.
Brian Hole, Esq.